I didn't, I didn't know this. Tell me how to pronounce your last name. DeRay. Mr. DeRay, please proceed. Good morning, Your Honors. After, you know, just hearing a case where there's a lot of weighty issues involved and some very complicated issues at the forefront of Pat and Mo, as I start here, I want to give you a little bit of context for why we're here and what seems like comparatively a pretty simple issue, in other words, why we got here to this court. As a bit of background, I mean, recently one of the points of emphasis, it seems like the PTO has been emphasizing, has been that it disfavors the use of functional claim language. For example, rather than simply reciting that you have in a claim first and second components that are configured to be held together, the PTO would prefer or favor recitation that specifies the specific structural relationship of those two claim elements. This might be, for example, recitation. Just out of curiosity, if the words injection molded are structural and not purely process, what, how ought they to be construed? What does it mean? In what ways do they help define a structural aspect? Got it. Well, I think that one thing would be that they help hold, you know, when you have a part, first part, injection molded, about another part, and I think that's one of the things that gets lost is, I think if you kind of piecemeal just look at the phrase injection molded, right? So like this claim uses the words injection molded a couple of different times. It recites, for example, first that you have an injection molded strut component, and then it recites you have an injection molded first and second arm components. We're not sitting here, we're not really looking at those. Let me just ask. I mean, I guess I took it that there are sort of two parts to the focus on this phrase, injection molded framework about. One of them is the about portion, about the struts, and the other is even before you get to that, that you have this injection molded framework. And I guess it's paragraph 140 of your spec at page 80. Yes. I guess here's what I'm curious about. It says once integrally formed, and second it says integrally constructed. Might it be possible to say that even though injection molded, among other things, describes a process, here's how we got to it, that's a process that in general and specifically here results in a structure, namely a integral structure that's not a stitching together of what once started out as separate components. And that gives it structure. I think that's entirely right, Your Honor. So is it the same then as like unitary? So the injection molded components themselves, yes. So if you have an injection molded strut component and the injection molded arm components, each of those would be unitary. When you injection mold them together, so what's being recited specifically and the recitation that's kind of been emphasized and focused on in our brief and kind of the point of dispute is that language of injection molded about. And so when you're injection molding it about, it's structurally distinct. And it seems clear there might be an open question about, you know, it might take an expert to recite exactly what's happening at a chemical level when you're doing that, exactly what the result is. But what seems clear is that there is a structural distinction over the prior art, which really just has a fabric sleeve, which has a sheath in it, that you then put a metal stiffener into. So you've got injection molded strut component. So that would be integral strut component. Injection molded first and second arm components. That means those are integral. And then when you say an elastically stretchable framework injection molded about the strut and arm components, are you then saying that that stretchable framework is unitary, but it's molded about the other things? Yeah. I mean, there's actually a great example in the figure one of the application. It kind of illustrates this, which is on appendix 85, where you can see, you know, the strut component. I mean, you can see that the strut component there, which is that middle portion of the hinge. What's the number that it's designated by? It doesn't. I mean, it's 108, I believe. Okay. I think that might be pointing to the whole thing. Let's see. I've got it right here. Because the page that you've identified, page 85, has all these numbers on it. Yes. You could identify by number which one you're referring to. So the hinge mechanism is 108. And the strut's 112. Yes. So if you look at it, it's got that strut component is integrally, or sorry, the framework, which is the 106, is injection molded about the strut component. And one of the results of that, which you can see, is that actually it holds it within it. So it doesn't require some other additional fastener. It doesn't require some other additional, you know, method of fastening it. Our position is really just that that is a clear structural limitation that we have tried to call out on a good faith basis, you know, in accordance with what our disclosure shows, what our figures illustrate, saying that, look, we've got this framework that's injection molded about the strut component. We think that's different than the fabric sleeve that just has a sheet that you put metal stiffener into. I guess there's two different ways to look at this. You know, when the word welded, for example, in Guarnero was discussed as not being processed and actually an imbuing structure that needed to be present, it was because welded, when you weld things together, it results in an adhesion of sorts, you know, it bonds them together. And so you're focusing on how the injection molded about is similar in that it creates like an encapsulation that helps hold something in place. But that's really more the about language than the injection molded. Like the word welded standing alone, right, is going to tell you two things are going to be joined. The words injection molded standing alone don't necessarily do that. I mean, I think that we're probably helping you even more than you're helping yourself in that. Not that you're doing a bad job, just to be clear. I mean, because we're saying we think the words injection molded standing alone, based on our discussion with you, may have a structural, it may convey structural features all by themselves that have to be dealt with above and beyond just the about part. And that's another reason why it's not just a process. And that's what we tried to emphasize in the brief when we note that the examiners actually kind of acknowledged this. When the examiner talked about how the injection molding itself actually holds that strut component to the framework, the examiner wasn't referring to language about the injection molded about, he was just referring to the injection molding itself actually does some of that holding. Now he felt that there were additional fasteners that held it just as much or more. He was actually referring to riveted fasteners, and you can look at it. Number 118 and 120. Yeah, exactly. Well, it's actually, there's a component riveted at 133 in figure five. They go into the spot where 118 and 120 are, right? That's where the rivets hold the strut. 118 and 120, no, actually not. That's the hinge. So that's just the hinge. Got it. It's the riveted fasteners he was referring to were actually on figure five, which is appendix 89. 133 is an example of one of them. And those rivets actually connect. It's a bit confusing because those rivets actually connect a strap retaining component where it has the two slots, 134 to restrain the strap. So his argument. That's not the strut and the framework. Yeah, that's not the strut. But you have these unnumbered rivets that connect the strut to the arm but not to the framework. Yes. Well, so you're, got it. I see the ones you're talking about. Yeah. Yes. So those connect the arm components but not necessarily the strut component to the framework. If we were to agree with you that these limitations should be given weight, that they have meaning, don't we have to remand for the PTAB to consider in the first instance, you know, whether there's differences between the claims and the prior? Yeah. I mean, I think so. And I think potentially for the examiner. I mean, that's why I started this by saying like, you know, trying to emphasize why we're here. I mean, the struggle is just that it seems like all we wanted was for this recitation to begin in some sort of patentable way. We think there are just clear structural differences over the simple fabric sleeve or sheet. And we actually, I mean, we won on another claim. There was an additional claim that recited that it had a, that we had one on each side, a strut or this recitation on each side. The prior art only showed it on one side. We didn't want to just, I mean, we felt that that was probably just the examiner was going to go back and say it was obvious. Here too, maybe ultimately that's what will happen, but we just think that this recitation is clearly structural. We think that, or we would appreciate it to kind of be treated as such so we can start engaging on the merits of the prior art and whether or not we actually have something that's patentable over the prior art. And that's why I started with the context of, you know, if one of the patent offices' emphasis is on, you know, they say they don't want functional claiming, that's kind of the opposite of what we did here. We didn't just say these two things are held together. Like, I mean, at one point the solicitor suggests that, you know, the recitation of injection molded is actually a functional limitation. But that's not what we were trying to do at all. We were trying to recite the structure as specifically as we could by reciting that you had this framework that was injection molded about the strut and arm components of the hinge mechanism. It's, you know, that's what we had. That's what we tried to recite. We think it's a structural limitation. We think that the examiner has kind of acknowledged that it conveys a structural feature by doing some of that holding. The examiner thought that the rivets and other fasteners he referred to were actually doing more. But I don't think that changes the fact that he acknowledged that there is something structural there. There is some holding going on. Notably, the solicitor also suggested that, you know, one of the reasons he felt that our argument wasn't persuasive was that it should be construed in a way, it should be construed against us because we could just amend and add the fasteners. But again, notably here, we're not necessarily claiming fasteners are holding for each component. Like the strut component is not really. You're using up your rebuttal time. You want to save it? I will save it. Thank you. Mr. Piccolo. Thank you, Your Honors, and may it please the court. This is going to take a little bit of time because I think we have to go to a few appendix pages and what I'm about to say will make sense. Arm components. The injection molded about, as the claim reads, says that the injection molded framework goes about, or he has arm components in the claim. That's not in the specification that Your Honor Judge Taranto pointed to initially, which I think plays a key role in this case that page 81 of the appendix that has the specification, and that's the only place that injection molding is discussed, and it's discussed without specificity, only talks about injection molding and the struts, the framework and struts, not about what the claim says. So it's really important, and we think he might be able to amend around Gildersleeve as Claim 2 got around when the board decided for him on Claim 2, but Claim 1 says that the mold, and this is in Part B of Claim 1, molded about the strut and arm components, so that integrally formed cannot say enough in the specification about what's not even mentioned, the arm components. So he may be able to use more of what's in his specification, like fasteners. He later in the claim... I'm having a lot of trouble following your argument. I really don't understand what it is you're trying to convey. That the injection molded about for the framework per the claim has to go around the strut and the arm components, and his specification does not elaborate on that. His specification... This is an originally filed claim. Well, in terms... So it's considered part of the specification on... Oh, no, he amended this. I'm sorry, no, Your Honor. This is an amendment? Yes, it is. This element was amended? Yes, Your Honor. That is at page 23 of the record, September 2012. Amendment to the claims adds this precise language. It's underlined. I have a question for you. Yes. Which is, even if that's true, and the specification doesn't talk about what injection molded about the arms is, I thought that what we were looking at was just the phrase injection molded. Correct. And that the PTAB said injection molded is a process, and therefore it doesn't have weight. But you look at the specification, and I think that Judge Toronto pointed out, for example, on the very page you were looking at, page 881, that it talks about how through the injection molding, they're integrally formed, integrally constructed. And so what you're talking about is unitary, integral. That's the structural understanding of injection molded. So why does it matter whether the specification specifically disclosed, at least for purposes of what we're considering today, which is whether injection molded has a structural meaning, why does it matter whether the specification talks about injection molding about an arm? Thank you, Your Honor. It matters a lot because integrally formed does not say much, especially when you look at applicant had us looking at figure one, which is on page three of our brief. Figure one, the framework, which is the big thing, that's not, I mean, that might overlap the strut, and it doesn't overlap the arms. So his drawings do not elaborate on integrally formed, and integrally formed is a very general type phrase. But it sounds to me, put aside generality. You've probably read a thousand times more patents than I have. I have the impression, and correct me if I'm wrong, that a phrase like integrally formed appears in patent claims and is treated as structural. So if you simply took out injection molded and plopped down in its place integral or integrally formed, there wouldn't be any real doubt that that is a structural element to be given patentable weight and then evaluated in the usual way. But is that wrong? I don't think it's totally wrong, Your Honor, because... That's good. I'm glad there's something there. Well, for infringement, okay, integrally formed, would this drawing, figure one, which looks kind of general, you have some overlap, you don't go over the arms, so is that integrally formed? Would that infringe or would something need to be a tighter, compact match to be integrally formed and infringe? And during prosecution, he could give clarity to this. I understand what you're saying, but it seems to me the dispute is then over what meaning to give this term. And the issue we have before us seems to me to be, should this term be given any meaning at all? Well, I think the board, okay, the board considered it, and it did not impart specific enough structure. And what I'd like to discuss is how the rest of the claim has an arm component, another arm, a strut, they're connected, the word connected is right in the claim, so the claim has a lot of structure. And what the board was saying was, tell us, and this is really important too, I think, Your Honors, on page 154 of the record where he made his argument to the board, and this is 154, this is what the board was presented, and he says, clearly conveys structural limitations similar, this is near the top of the page, similar to the use of the phrases such as welded, intermixed. Okay, so he was relying on just the phrase as imparting what he says even, clear structure, but doesn't say that it goes around both the arms and the strut. In such a manner that infringers out there would know what the structure is. And so when the board got this, quote unquote. He says it right below there, the first sentence of the next, not the next paragraph, which is a single sentence. By the way, you can't have one sentence paragraphs, Mr. Dorey. The sentence after that, that is comma, Gildersleeve clearly fails to anticipate the structure of a framework injection molding about strut and arm components. So you're right, he didn't say it in the paragraph that you pointed to, he said it in the next one. I'm sorry, Your Honor, but what the structure is, does it have to cover the strut and arm components? About, I think about is getting a lot of weight here. Did you guys hold these claims indefinite? No. No, you held them anticipated. I'm sorry, Your Honor. In terms of added structure to overtake Gildersleeve. And when he did added structure, such as in claims 2 and 9 to 13 and 16, he got around Gildersleeve. Why is an injection molded structure? It means a unitary piece, a piece formed of a single molding process. Why isn't that a strut imbued with structure? Thank you, Your Honor. Because, back to the claim language, it's the framework that is injection molded itself, by itself, not with, in the same process. I don't understand. You're still telling me, you're still, if I said the RED framework, RED would be an adjective modifying framework. My claim would then require RED to anticipate the accused structure in Gildersleeve would have to be RED, if that were a claim element. So why is an injection molded an adjective describing framework? It is. But it doesn't. But it doesn't mean anything? It doesn't impart specific structure to overcome Gildersleeve. Wait, a framework could be made up of 10 different components, right? Each one joined together by hinges, screws, bolts, rivets. A framework could be 10 different pieces, correct? Yes. Or a framework could be a unitary structure, a single structure that isn't simply the compilation of a bunch of pieces joined together. And that's in Gildersleeve. Well, then you'll find, maybe you can find that. No, his framework is unitary. It sounds like maybe you want us to say that maybe the board should have imparted some meaning to this language. But even if it had some meaning, like integral, then we should say that that error by the board was harmless because Gildersleeve still teaches. Absolutely, Your Honor. And what Appellant here today started talking about functional language, Gildersleeve meets all of that function of engulfing the hinge mechanism. So when he was trying to say function of the framework in terms of holding the hinge mechanism, Gildersleeve meets that function? Gildersleeve meets the integrally formed? That's the problem. You said absolutely to Judge Stoll and you're telling me Gildersleeve has this. You don't want me to start making fact findings in the first instance. No, but harmless error that the board… But to say it's harmless error, I have to make a fact finding. I have to read Gildersleeve and figure out what it teaches, don't I? Well, it teaches what was argued that injection molded about Gilders… That's what the board said it was meant. I think what Judge Moore is saying is that we are not in a place to make that kind of fact finding in the first instance. Well, I don't think it's… I'm sorry, Your Honor. I don't think it's a fact finding. The anticipation is a fact finding and the substantial evidence that supports this is… I was just going to say the board said this limitation has no weight. This is a product by process claim and so we're not giving any weight to this limitation. I don't see how we can say, no, it needs some weight and we're going to go ahead and decide as a matter of fact whether there's anticipation or whether even this one limitation is satisfied by the prior without a concession. I don't see how we can do that. I'm going to try at least one more time. I'm sorry. But the board says because it does not change the claimed product. So the claimed product is the framework whether it's integrally formed, which is not in the claim, or injection molded. The product as unitary is the same product that's in Gildersleeve. So Gildersleeve has the structure of this claim. And if injection molded is the process, we know in patentability that's not given weight. Smith-Klein and Ray Thorpe, those cases say that injection molded, which he describes in his specification as a process. He says on page 81 of the record, again, he says that this is, page 81, paragraphs 140 and 141, that this is a method. This is a process to do, it's right after injection molding processes. So the board was guided eminently so by this court's clear jurisprudence on product by process during patentability. Abbott v. Sandoz says that during patentability, process limitations are not given weight. You have to defeat the structure that came before. And so Abbott, Smith-Klein cited in our brief, and Ray Thorpe going back to 1985, we have a lot of long-standing case law, and he admits that this is a process. That's right on page 23 of his specification, A81 of the appendix. He says the injection molded process. Just to come back to something I said near the beginning, and it might have gotten lost, but this may be a process that, as this sentence says, produces a structural feature, namely integral formation. No, but I'm sorry, I would disagree, Your Honor, that there isn't integral formation because one doesn't talk about the arms. I don't understand that argument. I still don't understand it. And page 74 of the appendix talks about the arms expressly and talks about support by molding. I don't know. Seems like that is a pretty clear reference to the injection molding. There's no other molding referred to anywhere in the specification. Page 74 of the appendix, right at the top, where it says the struck components may be so embedded within the material and explains that of the support by molding or otherwise forming the framework. Then the very next sentence is similarly. What does similarly mean? It means referring back to the prior sentence, which talks about molded by the framework. Similarly, each of the first and second arm components may be at least partially embedded. If that's not about support by molding and if that molding doesn't mean injection molding, I really don't know what else this patent is about. It's the only molding described anywhere in the patent. The word molding right here is tied directly to the arm components and the framework. So I just don't understand your argument as a matter of fact about what the specification discloses. That it's a process and therefore doesn't count. And as the board said, you haven't shown us as to structure how it changes the product, which is met by Gildersleeve. Thank you, Your Honor. Thank you, Mr. Piccolo. Mr. Dore, you have your rebuttal time. I was going to start by emphasizing that the spec does actually disclose that the arm components can be embedded in the framework, but the court just pointed that out. The second thing I wanted to briefly address, he talked a little bit about infringement, or he kept talking about his concerns were driven by concerns about infringement. Obviously, I don't know that his concern is particularly relevant, where even assuming arguendo it was construed as a product by process limitation for the purpose of infringement analysis, obviously the limitation would still be relevant. It would still be relevant for the purpose of infringement even if it was construed as a product by process limitation. Yes, that's the downside of product by process claims. Yes, exactly. You lose both ways. Similarly, he wants to talk about a case law like Green-Lyant and Amgen, and other ones talking about that, which again, our position isn't that it is a product by process limitation. We just think it's a structural limitation. That's why we're citing the Gartnero. And you don't believe, therefore, that this is a product by process claim? Yes, we don't believe this is a product by process claim. We have tried to make it clear it's a structural recitation. We tried the best we could to recite a structural recitation. The point I wanted to briefly make about his citation to those cases is just that, even under those cases, it's explicitly recognized that, and I'm reading from Green-Lyant v. Zykor 692 F3D 1261, there is an exception to this general rule that the process by which the product is made is irrelevant. As we recognize in Amgen, if the process by which a product is made imparts structural and functional differences, distinguishing the claim product from the prior art, those differences are relevant as no evidence of anticipation. So again, we don't even think that applies, but even if it did, we would still have an argument there. Really here, we just think that it's clearly a structural limitation. The phrase injection molded, the court's exactly right, and I thank you for emphasizing that you don't even have to focus on the fact that they're interpreting it piecemeal outside of the additional about language, that you can even just focus on the injection molded itself. It seems like a structural limitation. I tried to emphasize, unfortunately, this isn't a case that came from a district court where there's been extensive expert testimony, that there hasn't been a lot there. So what I tried to do was pull from something in the record that showed that the PTO was acknowledging that this was structural language. And what I found in that regard was the examiner's acknowledgment. Again, I'm looking at Appendix 39 where the examiner acknowledges it. But the examiner acknowledges that the fasteners hold hinge mechanisms to the framework as much as the injection molded even more, acknowledging there is some sort of structural element there or that it's accomplishing something functionally. And then the other, I think, relevant factual finding the examiner made is that it specifically found, the examiner specifically found that Gildersleeve does not disclose that its sleeve is injection molded. And that's from Appendix 28 and 29. I think that combining those two things, it just seems clear that on the one hand, A, it's structural, the examiner has acknowledged that it's structural, and B, it's just not present in the prior art. That's really just the core of our argument. Okay. I thank both counsel. The case is taken under submission. All rise.